UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
GENERAL LABORERS UNION LOCAL )
242 and CEMENT MASONS LOCAL )
UNION No. 528, )
)  Cause No. C08-0611RSL
Plaintiffs, )
v. )
)  ORDER OF DISMISSAL
FARROW CONCRETE SPECIALTIES, )
)
Defendant. )
_____)

This matter comes before the Court on plaintiffs' motion for summary judgment (Dkt. # 12) and the additional memoranda submitted by the parties in response to the Court's April 29, 2009, Order to Show Cause.

During the summer of 2005, defendant Farrow Concrete Specialties was scheduled to start work as a subcontractor on two large public projects in the Seattle area. The general contractor on both jobs was PCL, a signatory to the General Laborers Union Local 242 master labor agreement. Pursuant to that agreement, PCL could subcontract only with companies who were also signatory to the agreement. Defendant, a non-union employer, was asked to become a signatory to the master agreements for General Laborers and the Cement Masons. It declined. Defendant's participation in the projects was of some importance to PCL, however, because it would allow the contractor to fulfill its minority-subcontract requirement. In order to help the

ORDER OF DISMISSAL

general contractor, to forward their organizing efforts, and to allow Farrow Concrete Specialties to gain experience with the unions, plaintiffs presented defendant with single-job compliance agreements for the two projects and the "Memoranda of Understanding" ("MOUs") that are at issue in this litigation. Benish Dep. Tr. at 24 (Dkt. # 12). Defendant signed the documents on or about August 4, 2005.

The compliance agreements allowed defendant to become a temporary signatory to the master agreement. Defendant promised, among other things, to use the union hiring hall, pay union wages, and make contributions to the applicable trust funds for the duration of the two projects. Through the compliance agreements, PCL could satisfy its obligation to hire only union subcontractors and Farrow Concrete Specialties could work on the projects without having to deal with picketing or strikes by the unions. The MOUs that were signed on the same day purportedly require defendant to sign a "full" compliance agreement with the unions if Farrow Concrete Specialties performed work for a union contractor in the future. The effect of a "full" compliance agreement would be to bind defendant to the master collective bargaining agreements then in force. With minor variations that do not affect the analysis set forth below, the MOUs state:

> The following parties, Farrow Concrete Specialties; Cement Masons Local # 528 and Laborers Local 242 do hereby agree that if Farrow Concrete Specialties subcontracts, contracts or performs any other work for a contractor signatory to either the Cement Masons Local # 528 or Laborers Local 242 or both, he then will automatically become fully signatory to both Cement Masons Local # 528 and Laborers Local 242.

The MOUs do not refer to or address the situation in which defendant found itself during the summer of 2005, but the unions insisted on their execution in exchange for signing the single-job compliance agreements.

Plaintiffs filed this action to enforce the MOUs. Before proceeding to the merits of the claim, the Court must ensure that this dispute falls within its limited jurisdiction. See, e.g.,

ORDER OF DISMISSAL                    -2-

Sarei v. Rio Tinto, PLC, 487 F.3d 1193, 1200 (9th Cir. 2007). Plaintiffs, as the parties bringing a claim in federal court, have the burden of establishing subject matter jurisdiction. In re Dynamic Random Access Memory Antitrust Litig., 546 F.3d 981, 984 (9th Cir. 2008). They argue that jurisdiction exists under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

Section 301(a) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Read literally, § 301(a) would create federal jurisdiction over any contractual dispute between a union and an employer, regardless of the subject matter. Plaintiffs have not shown that such an expansive interpretation was intended by Congress, and the legislative history and case law suggest a more limited jurisdictional grant. In enacting § 301(a), Congress wanted to make collective bargaining agreements equally enforceable by, and binding on, unions and employers. During the 1940s, some state laws made it difficult to sue and/or execute judgments against unincorporated membership organizations, such as unions. District 2 Marine Eng'rs Beneficial Ass'n v. Grand Bassa Tankers, Inc., 663 F.2d 392, 396 n.4 (2nd Cir. 1981) (summarizing legislative history of § 301(a)). Providing a venue in which collective bargaining agreements could be enforced was deemed necessary "to encourage the making of agreements and to promote industrial peace through faithful performance by the parties." Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 452-54 (1957). Although the congressional focus when enacting § 301(a) was on collective bargaining agreements, the term "contracts" as used in the statute is significantly broader than the phrase "collective bargaining agreements." Thus, the courts have found that other types of agreements affecting workplace conditions and/or resolving controversies arising out of the employment relationship also fall within the jurisdictional grant of § 301(a). See, e.g., Retail Clerks Int'l Ass'n, Local Unions No. 1 v. Lion Dry Goods, Inc.,

369 U.S. 17, 28 (1962) (holding that a strike settlement agreement could be enforced in federal court).

The question before the Court is whether the MOUs at issue in this litigation are "contracts between an employer and a labor organization representing employees . . . ." for purposes of § 301(a). It is clear that the MOUs are not themselves collective bargaining agreements under the Labor Management Relations Act or "pre-hire agreements" authorized under section 8(f), 29 U.S.C. § 158(f). Whether they are more like the strike settlement agreement discussed in Retail Clerks (which is clearly covered by § 301(a)) or are the equivalent of a business contract negotiated by a union for its own benefit (such as the contract for the purchase of an automobile discussed in District 2 Marine) is more difficult to discern. In Retail Clerks, the employees went on strike when negotiations for renewal of their collective bargaining agreement ended in impasse. The Supreme Court held that:

> It is enough that [the settlement agreement] is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them. It came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute. Its terms affect the working conditions of the employees of both respondents. It effected the end of picketing and resort by the labor organizations to other economic weapons, and restored strikers to their jobs. It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a).

Retail Clerks, 369 U.S. at 28.

The same cannot be said of the MOUs: the memoranda were not significant to the maintenance of labor peace and they did not affect the employment relationship. Plaintiffs argue that defendant promised to become a union contractor in the future if he ever again worked on a union job. Although plaintiffs clearly wanted a commitment in favor of unionization from defendant, the MOUs did not resolve unrest among defendant's employees or even a dispute between the unions and Farrow Concrete Specialties. The unions' dispute was with PCL, which was in danger of breaching the union-only provision of the master agreements, and was fully

ORDER OF DISMISSAL                          -4-

resolved when defendant agreed to the single-project compliance agreements. The MOUs were not necessary to allow Farrow Concrete Specialties to work on the public works projects. Because there was no on-going dispute that required resolution (either between the union and Farrow Concrete Specialties or between the employer and its employees), the MOUs make no mention of, much less address, the situation between the parties in 2005. Nor did the MOUs establish or affect the working conditions of defendant's employees. The unions had absolutely no relationship with Farrow Concrete Specialties or its employees: the MOUs they negotiated did not "resolve[] a controversy arising out of, and importantly and directly affecting, the employment relationship." Retail Clerks, 369 U.S. at 28. In these circumstances, the Court finds that the MOUs are materially different from the strike settlement agreement at issue in Retail Clerks and that consideration of the factors set forth in that decision does not support a finding of subject matter jurisdiction under § 301(a).

Plaintiffs correctly point out that an existing representational relationship between the union and defendant's employees is not necessary to confer federal jurisdiction. The unions rely on a number of cases in which an as-yet unrecognized union and an employer entered into a contract establishing the process by which an organizational drive and/or representation determination were to be conducted. The case most favorable to plaintiffs' position is Hotel Employees, Restaurant Employees Union Local 2 v. Marriott Corp., 961 F.2d 1464 (9th Cir. 1992). In that case, the San Francisco Redevelopment Agency was soliciting bids for the development of a major luxury hotel. When Marriott expressed an interest in the project, Local 2 objected based on its perception that Marriott was anti-union. The union and Marriott negotiated an agreement whereby the union withdrew its objections and Marriott promised to (1) give first consideration to applicants referred by Local 2 when filling job vacancies, (2) refrain from expressing an opinion regarding whether its employees should authorize Local 2 to be their bargaining representative, and (3) determine whether Local 2 represented a majority of employees using a "card check" procedure instead of the usual National Labor Relations

ORDER OF DISMISSAL                        -5-

Board election procedure. In a footnote, the Ninth Circuit noted that § 301(a) jurisdiction existed because the letter agreement was "designed to end union opposition to Marriott's involvement in the construction of a large hotel and to guide employment of the hotel staff." 961 F.2d at 1466 n.3.

While there are some similarities between the situation in Marriott and this case, there are also significant differences. As discussed above, the MOUs were not technically necessary to resolve the unions' objections to defendant's participation in the two projects during the summer of 2005. Once the single-project compliance agreements were signed, the requirements of the master agreements were satisfied and the unions had no valid dispute with either PCL or defendant. Although the unions were able to make use of their situational leverage to demand that Farrow Concrete Specialties do more than merely comply with the existing contracts, there is no reason to presume that federal courts should decide – or that federal labor law should govern – whether the resulting contracts are enforceable and how the terms should be construed. More importantly, the MOUs do not guide the hiring or organizing of defendant's employees or otherwise affect any of the terms or conditions of their employment. In fact, the MOUs are completely unrelated to any valid representational activity on the part of the unions. Neither union represented defendant's employees at the time (either as a majority or minority representative), and they had no authority to bargain on their behalf. Whereas in Marriott the third-party union negotiated procedures to ensure a fair and valid organizational drive and representational vote, plaintiffs in this case were forwarding their own organizational efforts at the expense of the employees, who under the MOUs would be deprived of their opportunity to determine whether or not to unionize. Charitably interpreted, the MOUs constitute a conditional promise by an employer to become a union contractor in the future. The unions were not representing the employees or trying to safeguard their right to organize and select a bargaining representative. Because the agreements the unions struck with the employer were not designed to promote peace between the employer and its employees, but rather to

further the union's interests at the expense of those employees, the Court finds that this is not the type of contract that triggers § 301(a) jurisdiction.

The MOUs are unlike contracts that have been enforced under § 301(a) in two respects: (1) the unions that are party to these contracts neither represented defendant's employees or were attempting to establish procedures through which they could obtain or show majority support amongst employees, and (2) the contracts had no direct or immediate effect on the terms and conditions of any employees. See District 2 Marine Eng'rs, 663 F.2d at 398 (finding that the term "employer . . . refers to the person or entity employing persons who are the subject of the contract with the labor organization and that Congress did not intend to create federal jurisdiction over all contracts between labor organizations and others merely because they happened to be employers."); Int'l Brotherhood of Elec. Workers, Local Union No. 8 v. C&M Elec., 734 F. Supp. 285, 287-89 (N.D. Ohio 1990), aff'd, 922 F.2d 841 (6th Cir. 1991) (an agreement between a union that did not represent any of defendant's employees and the employer that purported to end a strike by firing all existing employees and replacing them with union workers did not confer § 301(a) jurisdiction). Plaintiffs having failed to show that federal subject matter jurisdiction exists, their motion for summary judgment is DENIED and this matter is DISMISSED.[1]

Dated this 1st day of July, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[1] In the alternative, an agreement between an employer and a union that interferes with the right of employees to choose their own bargaining representative is illegal and unenforceable. Marriott, 961 F.2d at 1468 (citing Local 3-193 Int'l Woodworkers v. Ketchikan Pulp Co., 611 F.2d 1295, 1299-1301 (9th Cir. 1980)). Thus, even if federal jurisdiction exists and federal labor law applies, the Court would not enforce the MOUs.

ORDER OF DISMISSAL -7-